UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUILLERMO G., et al., <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF CHICAGO, DISTRICT 299, <br><br> Defendant. | No. 14 CV 3319 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

This is an action to recover attorneys' fees under the Individuals with Disabilities Education Act. Plaintiffs prevailed before an independent hearing officer on, among other things, their claim that defendant failed to properly evaluate the needs of their disabled son Guillermo. Both sides currently agree that plaintiffs are entitled to some reimbursement for fees, but they disagree on how much. The parties have filed cross-motions for summary judgment. For the following reasons, both motions are granted in part and denied in part.

**I.     Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On cross-motions for summary judgment, all facts are construed and all reasonable inferences are drawn in favor of the nonmoving party. *Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014).

## II. Background

Plaintiff Guillermo G. was diagnosed at birth with spastic diplegic cerebal palsy. Dkt. 23 ¶ 5. At the time of the events in this case, Guillermo was 14 years old and enrolled in defendant Board of Education of the City of Chicago's Public School District No. 299. *Id*. ¶¶ 1, 5. Because of his learning disabilities and physical impairment, Guillermo was eligible for special education provided by defendant. *Id*. ¶ 5. On August 22, 2012, Guillermo's parents, plaintiffs Antonio G. and Tomasa G., requested an impartial due process hearing under the Individuals with Disabilities Education Act (20 U.S.C. § 1400 *et seq*.). Dkt. 25 ¶ 5. Plaintiffs' amended administrative complaint raised 12 issues. *See* Dkt. 1-1 at 3-4. In summary, they were (1) whether defendant provided plaintiffs a complete and timely copy of Guillermo's school records; (2) whether defendant conducted a full individual evaluation of Guillermo when it re-evaluated him in October 2010; (3) whether defendant developed appropriate Individualized Education Programs (often called IEPs) in school years 2010-11, 2011-12, and 2012-13; (4) whether Guillermo required assistive technology; (5) whether Guillermo needed social work or

2

psychological services; (6) whether Guillermo needed speech/language, occupational, or central auditory processing disorder therapy and services; (7) whether Guillermo required extended school year services (i.e., summer school) in 2011 and 2012; (8) whether Guillermo made academic progress since 2010-11; (9) whether Guillermo required a therapeutic day school as his least restrictive environment; (10) whether Guillermo was bullied by other students; (11) whether defendant notified plaintiffs that it was changing Guillermo's special education, related services, or educational placement; and (12) whether defendant implemented IDEA's "stay-put provision" in a timely manner. *See id.*

On November 1, 2012 and December 27, 2012, defendant extended written settlement offers to plaintiffs. Dkt. 25 ¶ 6. Defendant's latter proposal offered to (1) provide all of Guillermo's student records then in its possession or that later became available; (2) conduct evaluations by Chicago Public Schools clinicians; (3) fund an independent psychological evaluation in the amount of $3,375.00 and an independent central auditory processing evaluation in the amount of $600.00; (4) place Guillermo, with transportation, at a therapeutic day school such as Acacia Academy; (5) develop an IEP incorporating plaintiffs' choice of placement and including "the appropriate recommendations from the CPS evaluations and from any private evaluations provided by the Parent [sic] for consideration"; (6) include extended school year for 2013; and (7) provide 140 one-hour sessions of after-school reading tutoring for compensatory education at a rate of twice a week. *See* Dkt. 21-2 at 7-8.

Plaintiffs rejected this offer and the hearing began on January 7, 2013. Dkt. 25 ¶ 7. After several days of testimony, the hearing officer found that defendant "had not fully evaluated [Guillermo's] [occupational therapy, speech/language, and assistive technology] needs . . . [and had] failed to provide [Guillermo's] parents with [an] IEP that made significant changes to [Guillermo's] program. [Defendant also] failed to develop [an] appropriate IEP and transition [plan,] . . . failed to implement [the] stayput [provision,] [and] failed to implement [the] IEP as written." Dkt. 1-1 at 1. At the same time, the hearing officer found that Guillermo "did not nee[d] [social work or psychological] services, [extended school year], or therapeutic day school." *Id*. After the hearing, plaintiffs complained to the Illinois State Board of Education about defendant's noncompliance with the officer's decision. Dkt. 23 ¶ 20. On October 8, 2013, the State Board confirmed that defendant was not in compliance. *Id*. ¶ 22.

Plaintiffs and defendant eventually resolved the matter by means of a settlement agreement. *Id*. ¶ 25. Among other things, the agreement provided for (1) waiver of attorneys' fees and costs incurred after February 13, 2014, (2) placement of Guillermo at Acacia Academy, (3) six weeks of extended school year, and (4) additional afterschool tutoring. *Id*. Plaintiffs submitted a claim for attorneys' fees on August 1, 2013, as well as supplemental claims on September 16, 2013, February 24, 2014, and March 19, 2014. *Id*. ¶¶ 27-28. Defendant has not paid any of these claims. *Id*. ¶ 31.

4

The parties agree that the lodestar amount—a calculation based on a reasonable, market-based hourly rate and the reasonable time expended—is $100,162.06. Dkt. 18 at 1-2; Dkt. 20 at 13.

III. **Analysis**

The Individuals with Disabilities Education Act grants me discretion to award attorneys' fees to parents who have prevailed in an administrative proceeding brought under the statute. 20 U.S.C. § 1415(i)(3)(B)(i)(I). One limit to my discretion, however, is that the law bars fees for services performed after the parents have received a written settlement offer and (1) the offer was made more than 10 days before the administrative proceeding, (2) the parents did not accept the offer within 10 days, and (3) the relief the parents finally obtained was not more favorable than the settlement offer. *Id*. § 1415(i)(3)(D)(i). This limit does not apply, though, if the prevailing parents were substantially justified in rejecting the offer. *Id*. § 1415(i)(3)(E).

While defendant acknowledges plaintiffs prevailed at the due process hearing, it also believes the relief plaintiffs finally obtained was less favorable than its December 27th offer.[1] In support of this position, defendant provides a chart assessing whether each individual term of relief it offered was finally obtained. *See* Appendix A to this Opinion. As defendant sees it, plaintiffs obtained (1) transportation to school, (2) funding for a central auditory processing evaluation, and (3) development of a new IEP, but did not obtain (1) placement at Acacia

---

[1] The parties do not dispute that the written offer was made more than 10 days before the proceeding or that plaintiffs did not accept it within 10 days.

Academy, (2) 140 hours of compensatory reading tutoring, (3) funding for a psychological evaluation, (4) an extended school year, or (4) an order to produce all records. *Id.*[2]

As defendant notes, its chart omits certain relief that was not offered to plaintiffs, but which plaintiffs obtained. According to defendant, even with this additional relief, the hearing officer's decision was less favorable than the December 27th offer. Dkt. 20 at 7. Specifically, although the officer granted 144 hours of compensatory occupational therapy and individual speech/language therapy, defendant offered a comparable 140 hours of compensatory reading education. *Id.* Likewise, while the officer ordered defendant to pay for plaintiffs' independent speech/language and occupational therapy evaluations at a combined cost of $3,275, defendant offered to fund an independent psychological evaluation costing $3,375. *Id.* at 8.

Taking umbrage with defendant's representation of the hearing officer's decision, plaintiffs offer a chart of their own. *See* Appendix B to this Opinion. The primary difference between the two charts is that plaintiffs' individually sets forth each IEP modification the officer ordered. Plaintiffs note that none of these modifications were proposed in defendant's settlement offer. On this point, defendant replies that its offer did in fact include these adjustments because the adjustments came from plaintiffs' independent evaluators, and defendant's offer states that it would "develop an IEP incorporating the parent's choice of placement

---

[2] Defendant also contends that the hearing officer did not address having CPS clinicians conduct psychological, central auditory processing, social work, occupational therapy, speech/language, or assistive technology evaluations. *Id.*

6

as reflected in the LRE section; to include the appropriate recommendations from the CPS evaluations and *from any private evaluations provided by [plaintiffs] for consideration.*" Dkt. 21-2 at 8 (emphasis added). Thus, according to defendant, its "offer did not have to specifically delineate everything included in the parents' IEE [independent education evaluation] reports because its agreement to include the appropriate recommendations from the parents' IEEs incorporates all the items specifically delineated in the hearing officer's decision." Dkt. 28 at 4.

Finally, though both charts acknowledge that the officer denied plaintiff's request for placement in a therapeutic day school such as Acacia Academy,[3] plaintiffs' chart notes that the officer instead ordered a change in Guillermo's placement for both 8th grade and high school, with transportation included.

Comparing the values of defendant's offer and plaintiffs' award is a tricky proposition. The difference between the two is not so great as to make the answer obvious. Reasonable arguments can be (and have been) made in favor of both sides. On the one hand, it is tempting to adopt defendant's proposal and focus on the fact that plaintiffs did not obtain placement at a therapeutic day school—relief valued at

---

[3] Plaintiffs suggest that in determining whether they finally obtained relief that was more favorable than defendant's offer, I should consider the relief plaintiffs obtained "as a result of the parties' settlement of a dispute of non-compliance [with] the hearing decision that continued for over one year." Dkt. 24 at 8. Specifically, plaintiffs suggest I consider defendant's agreement to place Guillermo at Acacia Academy. I decline to do so. While true that "[b]illing for time expended in efforts to secure compliance is properly billable," it does not follow that a private post-hearing settlement constitutes "relief obtained" for the purpose of § 1415(i)(D). Though an open question, I construe the statutory provision in light of the rule that a parent is not a "prevailing party" under IDEA unless it "obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief." *T.D. v. La Grange School District No. 102*, 349 F.3d 469, 478 (7th Cir. 2003). Because the private settlement between plaintiffs and defendant was not judicially sanctioned, plaintiffs did not "prevail" in achieving it. I therefore will not consider it in applying § 1415(i)(D).

7

$28,500 a year. Looking at dollars and cents, it would seem that defendant's offer was more favorable than what the hearing officer awarded plaintiffs. On the other hand, the officer's decision specifically articulated and adopted the recommendations of three of plaintiffs' independent evaluators. While defendant did offer to incorporate "appropriate recommendations" that were "provided . . . for consideration," this vague offer is unquestionably inferior to the well-defined, concrete, and fully independent IEP improvements plaintiffs in fact received. Thus, if value is defined by guaranteed meaningful improvements to Guillermo's educational program (in conjunction with incremental improvements in his placement), the relief obtained would appear to have been more valuable than defendant's offer.

In the end, though, I find plaintiffs were substantially justified in rejecting defendant's offer. By the time defendant made its offer, plaintiffs had already incurred over $20,000 in attorneys' fees. Dkt. 17-2 at 3-17; Dkt. 24 at 10. Plaintiffs' counter to defendant's November 1st offer put defendant on notice that fees would be a material part of any settlement. *See* Dkt. 17-1 at 90. Nevertheless, defendant's final offer included no provision for the payment of plaintiffs' attorneys' fees. Plaintiffs therefore had a choice: accept the offer and owe a hefty sum,[4] or seek to prevail at the hearing and have their attorneys' fees shifted to defendant. Faced with these two options, plaintiffs were substantially justified in rejecting defendant's offer. *Cf. Gary G. v. El Paso Independent School District*, 632 F.3d 201,

---

[4] Neither party has pointed to anything in the record suggesting that plaintiffs had no obligation to pay attorneys' fees.

210 (5th Cir. 2011) ("[W]e do *not* hold that every plaintiff rejecting a settlement offer because it does not include [attorney's] fees is, *per se*, not substantially justified in rejecting it.") (emphasis in original). Plaintiffs are therefore not barred from recovering post-offer fees.

Having determined the scope of a possible fee award, the next step is to determine what would be reasonable in light of the results achieved. *Farrar v. Hobby*, 506 U.S. 103, 114-16 (1992). The most critical factor in determining the reasonableness of a fee award "is the degree of success obtained" in relation to the other goals of the lawsuit. *Linda T. v. Rice Lake Area School District*, 417 F.3d 704, 707 (7th Cir. 2005). Defendant argues that the fee should be significantly reduced based on the difference between the judgment recovered and the recovery sought. Defendant contends that plaintiffs "did not succeed on half the issues they raised" and that plaintiffs received only 41% of the relief they sought. Dkt. 20 at 10-11. Defendant supports this position with two additional charts. *See* Appendix C to this Opinion. Defendant also argues that plaintiffs did not succeed "on the most significant issue—placement at a private therapeutic day school." As a result, defendant suggests the agreed lodestar ($100,162.06) should be reduced by 59%, resulting in an award of $41,066.44.

Plaintiffs once again disagree with defendant's representations and provide two more charts of their own. *See* Appendix D to this Opinion. Regarding the issues they raised at the hearing, plaintiffs admit that they failed to prove that (1) Guillermo did not make academic progress, (2) defendant did not provide Guillermo

9

necessary social work services, and (3) the school staff did not prevent bullying of Guillermo. Dkt. 24 at 11. As for relief plaintiffs requested, they reject defendant's claim that the officer denied a request for a finding that a lack of records denied Guillermo a free appropriate public education. Dkt. 24 at 11-12. Plaintiffs also take issue with the fact that defendant's chart does not separately consider each IEP and related service modification ordered by the hearing officer. *Id*. at 13. Nevertheless, plaintiffs acknowledge that they did not obtain all relief they sought, including (1) reimbursement for a private psychological evaluation, (2) private school placement, (3) extended school year, (4) after school tutoring for reading and math, or (5) social work services. *Id*.

I find that plaintiffs substantially achieved what they set out to achieve. Plaintiffs successfully proved that Guillermo had not been properly evaluated with regard to his occupational therapy, assistive technology, central auditory, and speech/language needs. More importantly, plaintiffs successfully obtained relief addressing each one of these needs. Plaintiffs also proved that Guillermo's IEPs were deficient from 2010 through 2013, and plaintiffs were granted an immediate IEP meeting to correct these deficiencies. Plaintiffs proved that defendant denied them the right to participate in the decision-making process for their son. And plaintiffs obtained placement for Guillermo in a public school that could implement his proper IEP.

At the same time, plaintiffs failed to achieve a number of their goals. Plaintiffs did not prove any deficiencies with regard to Guillermo's need for a social

10

worker or psychologist. They did not demonstrate a need for extended school years in 2011 and 2012, or that Guillermo failed to make academic progress. Plaintiffs did not prove that Guillermo required a therapeutic day school as his least restrictive environment. Plaintiffs also failed to prove that bullying conduct was sufficiently severe, persistent, or pervasive. Thus, a reduction in the lodestar to reflect this more limited success is appropriate. The need for a social worker or psychologist and a therapeutic day school represented a significant portion of plaintiffs' request, and a reduction of 25% appropriately accounts for the plaintiffs' failure to achieve those results in the contested hearing. I therefore award $75,121.55 in attorneys' fees (75% of the lodestar).

Plaintiffs request prejudgment interest. Whether to award prejudgment interest is within my discretion; though it is presumptively available to victims of federal law violations. *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003). Defendant argues against prejudgment interest, noting that § 1415 characterizes attorneys' fees as being "part of the costs[.]" 20 U.S.C. § 1415(i)(3)(B)(i). Defendant cites *Library of Congress v. Shaw* for the proposition that "[t]he term 'costs' has never been understood to include any interest component." 478 U.S. 310, 321 (1986). Nevertheless, in a post-*Shaw* decision, the Seventh Circuit held that "adjustment for delay in payment of attorney's fees is appropriate under § 1988."[5] *Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir.

---

[5] The relevant attorneys' fees language in § 1988 is identical to that of § 1415. *Compare* 42 U.S.C. § 1988(b) ("the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.") *with* 20 U.S.C. § 1415(i)(3)(B)(i) ("the court, in its discretion, may award reasonable attorneys' fees as part of the costs").

11

1994). The court further held that when, as here, the lodestar is calculated using the attorney's historic rates, the award is properly adjusted by adding interest. *Id*.

Accordingly, I grant plaintiffs' request for prejudgment interest, beginning to accrue 30 days after each respective fee petition was filed.[6] I also accept plaintiffs' proposal of using the average prime rate from 2012-2014, or 3.25%, compounded annually.

## IV. Conclusion

Plaintiffs' motion for summary judgment, Dkt. 16, is granted in part and denied in part. Defendant's motion for summary judgment, Dkt. 19, is granted in part and denied in part. Plaintiffs shall submit a proposed final judgment order consistent with the findings in this opinion by November 3, 2014.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 10/20/14

---

[6] To calculate the interest, each fee petition should first be reduced by 25%.